**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JOSEPH COMPOSTO, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | **CIVIL ACTION NO. _____** |
| v. | ) ) | |
| ATWOOD OCEANICS, INC., GEORGE S. DOTSON, JACK E. GOLDEN, HANS HELMERICH, JEFFREY A. MILLER, JAMES R. MONTAGUE, ROBERT J. SALTIEL, and PHIL D. WEDEMEYER, | ) ) ) ) ) ) ) | **CLASS ACTION COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS** |
| Defendants. | ) ) ) | |

Plaintiff Joseph Composto ("Plaintiff"), by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

## NATURE AND SUMMARY OF THE ACTION

1.     Plaintiff brings this class action on behalf of the public stockholders of Atwood Oceanics, Inc. ("Atwood" or the "Company") against the members of Atwood Board of Directors (the "Board" or the "Individual Defendants") or their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rules 14a-9, 17 C.F.R. 240.14a-9, 17 C.F.R. § 244.100, and 17 C.F.R. § 229.1015(b)(4), arising out of their attempt to sell the Company to Ensco plc ("Ensco" or "Parent").

2.     On May 30, 2017, Ensco and the Company announced they had entered into an Agreement and Plan of Merger dated May 29, 2017 ("Merger Agreement"), by which Ensco, through its wholly owned subsidiary, Echo Merger Sub LLC, ("Merger Sub"), will acquire all of

the outstanding shares of Atwood in an all-stock transaction in which Atwood's stockholders will receive 1.60 shares of Ensco common stock for each share of Atwood common stock (the "Proposed Transaction"). Based on the closing price of Ensco common stock on May 26, 2017, this represents a total value of $10.72 per share of Atwood common stock.

3.      The Proposed Transaction has a total transaction value of approximately $850 million and is expected to close as soon as the calendar third quarter of 2017.

4.      On June 16, 2017, Ensco and Atwood caused the filing of the Registration Statement for the issuance of Ensco common stock on Form S-4 (the "Registration Statement") with the SEC.  The Registration Statement is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding Atwood management's financial projections for Atwood and Ensco, that were prepared by Company management and relied upon by Goldman Sachs & Co. ("Goldman"), the Company's financial advisor. The Registration Statement further materially misleads Atwood stockholders by omitting any GAAP reconciliation of the non-GAAP financial measures contained in the Company's projections.

5.      Without additional information the Registration Statement is materially misleading in violation of federal securities laws.

6.      By unanimously approving the Proposed Transaction and authorizing the issuance of the Registration Statement, the Individual Defendants participated in the solicitation even though they knew, or should have known, that the Registration Statement was materially false and/or misleading. The Registration Statement is an essential link in accomplishing, and receiving stockholder approval for, the Proposed Transaction.

7.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from conducting the stockholder vote on the Proposed Transaction unless and until the

material information discussed below is disclosed to Atwood's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and Section 27 of the Exchange Act (15 U.S.C. § 78aa) because Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

9.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) Atwood is incorporated and headquartered in this District; and (ii) the corporate transactions, actions, and wrongs complained of herein, can only occur in this District.

## PARTIES AND RELEVANT NON-PARTIES

11.     Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Atwood.

12.     Atwood is a corporation organized and existing under the laws of the State of Texas. It maintains principal executive offices at 15011 Katy Freeway, Suite 800, Houston, Texas, 77094.

13.     Defendant George S. Dotson ("Dotson") has served as a director of the Company since 1988 and as Chairman of the Board since 2011.

14.     Defendant Jack E. Golden ("Golden") has served as a director of the Company since 2009.

15.     Defendant Hans Helmerich ("Helmerich") has served as a director of the Company since 1989.

16.     Defendant Jeffrey A. Miller ("Miller") has served as a director of the Company since 2013.

17.     Defendant James R. Montague ("Montague") has served as a director of the Company since 2006.

18.     Defendant Robert J. Saltiel ("Saltiel") has served as President and Chief Executive Officer ("CEO") of the Company since 2009 and as a director of the Company since 2010.

19.     Defendant Phil D. Wedemeyer ("Wedemeyer") has served as a director of the Company since 2011.

20.     Defendants referenced in ¶¶ 13 through 19 are collectively referred to as Individual Defendants and/or the Board.

21.     Relevant non-party Ensco is an English limited company organized and existing under the laws of England. Ensco maintains its corporate headquarters at 6 Chesterfield Gardens, London, W1J 5BQ. Ensco is a provider of offshore drilling services to the petroleum industry and operates one of the newest ultra-deepwater rig fleets and a leading premium jackup fleet.

22.     Relevant non-party Merger Sub is a Texas limited liability company and wholly-owned subsidiary of Ensco that was created for the purposes of effectuating the Proposed Transaction.

## CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this action as a class action on behalf of all persons and/or entities that own Atwood common stock (the "Class").  Excluded from the Class are Defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

24.     The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.  The Merger Agreement states that, as of May 26, 2017, there were 80,519,422 shares of common stock outstanding.  All members of the Class may be identified from records maintained by Atwood or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

25.     Questions of law and fact are common to the Class, including (i) whether Defendants solicited stockholder approval of the Proposed Transaction through a materially false or misleading Registration Statement in violation of federal securities laws; (ii) whether Plaintiff and other Class members will suffer irreparable harm if securities laws violations are not remedied before the vote on the Proposed Transaction; and (iii) whether the Class entitled is to injunctive relief as a result of Defendants' wrongful conduct.

26.     Plaintiff's claims are typical of the claims of the other members of the Class.  Plaintiff and the other members of the Class have sustained damages as a result of Defendants' wrongful conduct as alleged herein.

27.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.

28.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

## FURTHER SUBSTANTIVE ALLEGATIONS

### Company Background and the Proposed Transaction

29.    Operating for over 45 years, Atwood is an offshore drilling company engaged in the drilling and completion of exploration and development wells for others in the global oil and gas industry.

30.    In a joint press release dated May 30, 2017, the Company and Ensco announced that they had entered into the Merger Agreement the night before.

31.    The announcement read, in relevant part:

LONDON & HOUSTON--(BUSINESS WIRE)-- Ensco plc (NYSE: ESV) and Atwood Oceanics, Inc. (NYSE: ATW) jointly announced today that they have entered into a definitive merger agreement under which Ensco will acquire Atwood in an all-stock transaction. The definitive merger agreement was unanimously approved by each company's board of directors.

***

Under the terms of the merger agreement, Atwood shareholders will receive 1.60 shares of Ensco for each share of Atwood common stock for a total value of $10.72 per Atwood share based on Ensco's closing share price of $6.70 on 26 May 2017. This represents a premium of approximately 33% to Atwood's closing price on the same date. Upon close of the transaction, Ensco and Atwood shareholders will own approximately 69% and 31%, respectively, of the outstanding shares of Ensco plc. There are no financing conditions for this transaction.

Ensco expects to realize annual pre-tax expense synergies of approximately $65 million for full year 2019 and beyond. The combination is expected to be accretive on a discounted cash flow basis.

Ensco Chief Executive Officer Carl Trowell said, "The combination of Ensco and Atwood will strengthen our position as the leader in offshore drilling across a wide range of water depths around the world – creating a broad platform that

we can build upon in the future. This acquisition significantly enhances our high-specification floater and jackup fleets, adding technologically advanced drillships and semisubmersibles, and refreshing our premium jackup fleet to best position ourselves for the market recovery. We believe that the purchase price for these assets represents a compelling value to our shareholders, which is augmented further by expected synergies from the transaction."

Mr. Trowell added, "By bringing together our high-specification rig fleets, technology and innovation, and talented rig crews, we plan to continue delivering high levels of operational and safety performance to an even larger group of clients. We will remain one of our industry's best capitalized companies. Our combined financial strength, diverse customer base and larger scale should lead to greater strategic and competitive advantages as well as cost efficiencies, allowing for opportunistic investments through the market cycle."

Atwood's Chief Executive Officer Rob Saltiel stated, "The combination is an ideal strategic fit. Both companies are passionate about operational excellence, safety and customer satisfaction with core values and cultures that are perfectly aligned. We believe the combined company will offer an unmatched rig fleet and workforce. These attributes, anchored by a strong balance sheet, should enable the company to thrive as market conditions improve and allow Atwood shareholders to fully participate in the market recovery."

**Strategic Fit**

The transaction will join two leading offshore drillers – combining long-established histories of operational, safety and technical expertise with high-quality assets that cover the world's most prolific offshore drilling basins.

The acquisition will strengthen Ensco's position as the leading offshore driller with exposure to deep- and shallow-water markets that span six continents. Upon closing, Ensco will add six ultra-deepwater floaters, including four of the most capable drillships in the industry, and five high-specification jackups. The combined company will have a fleet of 63 rigs, comprised of ultra-deepwater drillships, versatile deep- and mid-water semisubmersibles and shallow-water jackups, along with a diverse customer base of 27 national oil companies, supermajors and independents.

**Combined Company Highlights**

The combined company's fleet will be among the most technologically advanced in the industry and will meet the deep- and shallow-water drilling requirements of an expanded base of clients around the world. Within the fleet of 26 floating rigs (semisubmersibles and drillships) are 21 ultra-deepwater drilling rigs, capable of drilling in water depths of 7,500′ or greater, with an

average age of five years – establishing this fleet among the youngest and most capable in the industry.

The jackup fleet will be the largest in the world, composed of 37 rigs, including 27 premium units. These jackups are all equipped with many of the advanced features requested by clients for shallow-water drilling programs, such as increased leg length, expanded cantilever reach, greater hoisting capacity and offline handling capabilities.

The combined company will be among the most geographically diverse drillers with current operations and drilling contracts spanning six continents in nearly every major deep- and shallow-water basin around the world. Regions will include major markets such as the Gulf of Mexico, Brazil, West Africa, Middle East, North Sea, Mediterranean and Asia Pacific.

Customers will include most of the leading national and international oil companies, plus many independent operators. In total, the combined company will benefit from a diversified client base with the largest number of current customers of any offshore driller.

Ensco's executive management will continue with Carl Trowell as President and Chief Executive Officer, Carey Lowe as Executive Vice President and Chief Operating Officer, and Jon Baksht as Senior Vice President and Chief Financial Officer.

Ensco plc's Chairman will continue to be Paul Rowsey and the board of directors will include Carl Trowell, plus two members from Atwood's current board effective at closing.

Ensco will continue to be domiciled in the UK and senior executive officers will be located in London and Houston. Ensco plc shares will continue to trade on the New York Stock Exchange under the symbol "ESV".

**Financial Highlights**

Future revenue growth opportunities are anticipated with an expanded fleet serving a larger customer base across a wide geographic footprint. While current market conditions are challenging, Ensco will be ideally positioned to meet increasing levels of customer demand as the market recovers.

Annual expense savings of $65 million are estimated to be realized in full year 2019 and beyond, and 2018 cost synergies are projected to be more than $45 million. Expense savings are anticipated from the consolidation of offices that include corporate staff departments and shore-based operations in overlapping markets, as well as the standardization of systems, policies and procedures across the organization.

Based on the anticipated annual savings, the planned combination is expected to be accretive to projected discounted cash flows.

The balance sheet of the combined company will remain strong. Adjusted for the expected retirement of Atwood's outstanding revolving credit facility with cash and short-term investments on hand, total available liquidity was $3.9 billion on 31 March 2017 and included $1.6 billion of cash and short-term investments.

The estimated enterprise value of the combined company is $6.9 billion, based on the closing price of each company's shares on 26 May 2017. The combined company will have approximately $3.7 billion in revenue backlog.

**Conditions and Timing**

The transaction is subject to approval by the shareholders of Ensco and Atwood, as well as other customary closing conditions. The transaction is not subject to any financing conditions. Ensco and Atwood intend to file a joint proxy statement/prospectus with the Securities and Exchange Commission as soon as possible. The companies anticipate that the transaction could close as soon as calendar third quarter 2017.

***The Materially Misleading and Incomplete Registration Statement***

32.     Defendants have failed to provide stockholders with material information necessary for an informed vote on the Proposed Transaction.   The Registration Statement, which recommends that the Company's stockholders vote in favor of the Proposed Transaction, misrepresents and/or omits material information in violation of Sections 14(a) and 20(a) of the Exchange Act.

> ***Misleading Statements and Omissions Regarding the***
> ***Financial Projections of the Companies***

33.     The Registration Statement fails to provide material information concerning the Company's financial projections and the financial forecasts for Ensco provided to the Board and Goldman.

34.     The Registration Statement discloses "Certain Unaudited Financial Forecasts" that the Company provided to the Board and Goldman during the process leading up to the execution of the Merger Agreement.

35.     The Registration Statement only provides projections of the Company's financial future for three metrics: Revenue, EBITDA, and Unlevered Free Cash Flow.  However, the Registration Statement fails to provide line item metrics used to calculate the non-GAAP measures of EBITDA and Unlevered Free Cash Flow.  The omission of such projections renders the non-GAAP projections included in the Registration Statement materially incomplete and therefore misleading.

36.     The Registration Statement also provides the Company's projections of Ensco's financial future for four metrics: Revenue, EBITDA, and Unlevered Free Cash Flow. These projections were based on those projections provided to Atwood by Ensco, and used in Goldman's financial analysis underlying its fairness opinion.

37.     However, the projections for Ensco fail to include the line items necessary to reconcile EBITDA or Unlevered Free Cash Flow to GAAP metrics.

38.     When a company discloses information in a proxy that includes non-GAAP financial metrics, the Company must also disclose comparable GAAP metrics and a quantitative reconciliation of forward-looking information.  17 C.F.R. § 244.100.

39.     Indeed, the SEC has recently increased its scrutiny of the use of non-GAAP financial metrics in communications with stockholders.  Recently, former SEC Chairwoman Mary Jo White stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as Atwood has included in the Registration Statement), implicates the centerpiece of the SEC's disclosure regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation.    Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors.    And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data.    I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.    I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[1]

Further, the SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[2]  In fact, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial metrics that demonstrate the SEC is indeed tightening policy.[3]  One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide *any* reconciling metrics that are available without unreasonable efforts.

---

[1]    Mary Jo White, Chairwoman, SEC, Keynote Address at the International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html.

[2]    *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. TIMES, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

[3]    *Non-GAAP Financial Measures, Compliance & Disclosure Interpretations*, SEC (May 17, 2016), https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

40.     Thus, the above-referenced line-item projections that have been omitted from the Registration Statement are precisely the types of "reconciling metrics" that the SEC has recently indicated should be disclosed to render non-GAAP financial projections not misleading to shareholders. Defendants must disclose the following line items used to calculate the non-GAAP financial measures for both Atwood and Ensco: (i) earnings; (ii) interest; (iii) income taxes; (iv) depreciation and amortization; (v) capital expenditures; (vi) stock-based compensation; (vii) changes in net working capital; and (viii) proceeds from the disposal of assets.

41.     Furthermore, the Registration Statement discloses that Ensco's own financial projections differ drastically from those Atwood provided to its own Board and Goldman, despite the latter's basis in the former.

42.     Ensco provided Atwood with its financial projections during due diligence. Reasonably, the projections of Ensco's financial future provided by Atwood to its Board and advisors should likely resemble Ensco's own best expectations.

43.     Instead, the projections provided to Atwood's advisors and Board diverge drastically from the projections provided by Ensco.

44.     Ensco discloses the following financial projections in the Registration Statement:

| (in millions) | Case A | | | Case B | | |
| --- | --- | --- | --- | --- | --- | --- |
| | 2017E | 2018E | 2019E | 2017E | 2018E | 2019E |
| Revenue | $ 1,930 | $ 2,135 | $ 2,259 | $ 1,844 | $ 1,863 | $ 1,872 |
| Contract Drilling Expense | 1,210 | 1,404 | 1,479 | 1,144 | 1,258 | 1,360 |
| Capital Expenditures | 679 | 297 | 163 | 660 | 305 | 153 |
| Unlevered Free Cash Flow(1) | (201) | 184 | 370 | (196) | 92 | 164 |

45.     Atwood discloses that it provided the following financial projections for Ensco to the Board and its advisors:

| | 2017E(1) | 2018E | 2019E | 2020E | 2021E |
|---|---|---|---|---|---|
| Revenue | $ 1,360 | $ 1,841 | $ 1,831 | $ 1,982 | $ 2,155 |
| EBITDA(2) | $ 413 | $ 548 | $ 579 | $ 763 | $ 953 |
| Unlevered Free Cash Flow(3) | $ 141 | $ 171 | $ 360 | $ 685 | $ 831 |

46.    It would appear, by cursory examination of these figures, that Atwood has drastically transformed these figures to make Ensco appear a more attractive strategic partner. In both sets of Ensco management's projections, the company expects negative values for unlevered free cash flows in 2017.

47.    Even if Atwood management is given the benefit of the doubt regarding Unlevered Free Cash Flows, the values for Revenue materially differ. For example, Atwood projects Revenues for Ensco in 2018 to fall below even the pessimistic set of Ensco management projections. Atwood's version of Ensco's 2019 Revenue diverges even further as it declines in contradiction of the increase shown in Ensco's projections.

48.    The omission of Atwood's manipulation of Ensco's projections materially misleads Atwood stockholders as to the value of Ensco common stock.  In a transaction such as this, where Ensco common stock represents the only consideration offered to Atwood stockholders, the inputs and assumptions involved in Goldman's analysis of Ensco's value must be fairly disclosed to Atwood stockholders.

49.    The Registration Statement also omits the following line items for the combined company forecasts: (i) earnings; (ii) interest; (iii) income taxes; (iv) depreciation and amortization; (v) taxes; (vi) capital expenditures; (vii) mobilization costs; (viii) proceeds from disposal of assets; and (ix) changes in net working capital.

### Misleading Statements and Omissions Regarding Goldman's Financial Analysis

50.    With respect to Goldman's *Illustrative Discounted Cash Flow Analysis – 5- year DCF Model – Atwood Standalone*, the Registration Statement fails to disclose: (i) the range of

illustrative terminal values for Atwood; (ii) the inputs and assumptions underlying the discount rates ranging from 13.0% to 15.0%; (iii) Atwood's net debt; and (iv) the number of fully diluted outstanding shares of Atwood provided by the management of Atwood.

51.     With respect to Goldman's *Illustrative Discounted Cash Flow Analysis – 5- year DCF Model – Ensco Standalone*, the Registration Statement fails to disclose: (i) the range of illustrative terminal values for Ensco; (ii) the inputs and assumptions underlying the discount rates ranging from 12.0% to 14.0%; (iii) Ensco's net debt; and (iv) the number of fully diluted outstanding shares of Ensco provided by the management of Atwood.

52.     With respect to Goldman's *Illustrative Discounted Cash Flow Analysis – 5- year DCF Model – Pro Forma*, the Registration Statement fails to disclose: (i) the range of illustrative terminal values for the combined company; (ii) the inputs and assumptions underlying the discount rates ranging from 12.0% to 14.0%; (iii) the calculated terminal year estimate of EBITDA to be generated by the combined company; (iv) the combined company's pro forma net debt; and (v) the number of estimated pro forma fully diluted outstanding shares of the combined company following closing as provided by the management of Atwood.

53.     With respect to Goldman's *Illustrative Discounted Cash Flow Analysis – Asset Life Model – Atwood Standalone*, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying the discount rates ranging from 13.0% to 15.0%; (ii) Atwood's net debt; and (iii) the number of fully diluted outstanding shares of Atwood provided by the management of Atwood.

54.     With respect to Goldman's *Illustrative Discounted Cash Flow Analysis – Asset Life Model – Ensco Standalone*, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying the discount rates ranging from 12.0% to 14.0%; (ii) Ensco's net debt; and

(iii) the number of fully diluted outstanding shares of Ensco provided by the management of Atwood.

55.    With respect to Goldman's *Illustrative Discounted Cash Flow Analysis – Asset Life Model – Pro Forma*, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying the discount rates ranging from 12.0% to 14.0%; (ii) the combined company's pro forma net debt; and (iii) the number of pro forma fully diluted outstanding shares provided by the management of Atwood.

### Misleading Statements and Omissions Regarding Atwood Management's Potential Conflicts of Interest

56.    The Registration Statement omits material information regarding potential conflicts of interest of the Company's officers and directors.

57.    Specifically, the Registration Statement fails to disclose the timing and nature of all communications regarding future employment and/or directorship of Atwood's officers and directors, including who participated in all such communications, including such communications with regard to Individual Defendants Golden's and Wedemeyer's future positions as directors of Ensco.

58.    Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

### Misleading Statements and Omissions Regarding Goldman's Potential Conflicts of Interest

59.    The Registration Statement omits material information regarding potential conflicts of interest of Goldman.

60.     Specifically, the Registration Statement fails to disclose Goldman's holdings in Atwood's, Ensco's, and their affiliates' stock.

61.     Full disclosure of all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

### *Misleading Statements and Omissions Regarding the Background of the Merger*

62.     The Registration Statement omits material information regarding the background of the Proposed Transaction. The Company's stockholders are entitled to an accurate description of the process the directors used in coming to their decision to support the Proposed Transaction.

63.     For example, while the Registration Statement provides that "[t]here were no further discussions with Company D or its representatives prior to the announcement of the merger," the Registration Statement fails to disclose whether there were any further discussions with Company D following the announcement of the Proposed Transaction.

64.     Defendants' failure to provide Atwood stockholders with the foregoing material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder.  The Individual Defendants were aware of their duty to disclose this information.  The material information described above that was omitted from the Registration Statement takes on actual significance in the minds of Atwood stockholders in reaching their decision whether to vote in favor of the Proposed Transaction.  Absent disclosure of this material information prior to the vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make an informed decision about whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm for which damages are not an adequate remedy.

## CLAIMS FOR RELIEF

### COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act
and Rule 14a-9 and 17 C.F.R. § 244.100 Promulgated Thereunder**

65.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

66.    Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction.

67.    Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that a proxy statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

68.    Specifically, the Registration Statement violates Section 14(a) and Rule 14a-9 because it is materially misleading and omits material facts, as set forth above.  Moreover, in the exercise of reasonable care, Defendants should have known that the Registration Statement is materially misleading and omitted material facts that are necessary to render the statements that are made non-misleading.

69.    All of the relevant information concerning the Company's financial projections was readily available to all Defendants at all relevant times.  The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth, or were grossly negligent in failing to know.

70.    The misrepresentations and omissions in the Registration Statement are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their right to cast a properly informed vote on the Proposed Transaction.

71.    Plaintiff and the Class have no adequate remedy at law.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

72.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

73.    The Individual Defendants acted as controlling persons of Atwood within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Atwood, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

74.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

75.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act

violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Registration Statement.

76.    In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

77.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

78.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

79.    Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A)    declaring this action to be a class action and certifying Plaintiff as the Class representatives and his counsel as Class counsel;

(B)    declaring that the Registration Statement is materially misleading and contains omissions of material fact in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(C)    preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

(D)    to the extent the Proposed Transaction is consummated prior to the Court's entry of a final judgment, awarding Plaintiff and the members of the Class rescissory damages against the Individual Defendants, including, but not limited to, pre-judgment and post-judgment interest;

(E)    awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses;

(F)    awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, and any appropriate state law remedies; and

(G)    granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: June 27, 2017

**OF COUNSEL:**

**LEVI & KORSINSKY, LLP**
Donald J. Enright
Elizabeth K. Tripodi
1101 30th Street, N.W.,
Suite 115
Washington, DC 20007
(202) 524-4290

*Counsel for Plaintiff*

**KENDALL LAW GROUP, PLLC**

By:   */s/ Joe Kendall*
Joe Kendall
Texas Bar No. 11260700
jkendall@kendalllawgroup.com
Jamie J. McKey
Texas Bar No. 24045262
jmckey@kendalllawgroup.com
3232 McKinney Avenue, Suite 700
Dallas, TX 75204
Telephone:  (214) 744-3000
Facsimile:  (214) 744-3015

*Attorneys for Plaintiff*